**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

ERIC GRIFFIN,                                           :

       Plaintiff,                    :     **CIVIL ACTION NO. 3:16-2412**

       v.                              :          **(JUDGE MANNION)**

DON E. BOWER, INC.,                            :

       Defendant.                 :

## <u>MEMORANDUM</u>

Pending before the court is a motion to strike filed by the plaintiff, Eric Griffin. (Doc. 9). The plaintiff seeks to strike fifteen affirmative defenses listed in the defendant's, Don E. Bower, Inc.'s, answer. (Doc. 5). The defendant's answer responds to the plaintiff's complaint, which alleges that the defendant violated the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 *et seq*. (Doc. 1). The defendant's answer also sets forth a total of twenty-three affirmative defenses, fifteen of which the plaintiff challenges in his current motion. For the foregoing reasons, the plaintiff's motion will be granted with respect to the defendant's fifth, sixth, seventh, eight, ninth, tenth, eleventh, twelfth, thirteenth, fifteenth, seventeenth, eighteenth, nineteenth, and twentieth affirmative defenses. The plaintiff's motion will be granted in part and denied in part with respect to the defendant's sixteenth affirmative defense.

## I.     FACTUAL AND PROCEDURAL HISTORY

The defendant is a provider of construction services that employed approximately sixty to seventy employees for twenty workweeks in 2014,

2015, and 2016. (Doc. 1 ¶9). The defendant hired the plaintiff as a superintendent on March 9, 2012. (*Id*. ¶10). On May 27, 2016, the plaintiff took a day off from work to take his three-year old son to the doctor. (*Id*. ¶12). The plaintiff's son was diagnosed with leukemia the following evening, on May 28, 2016. (*Id*. ¶15). Shortly thereafter, the plaintiff advised the defendant of his son's diagnosis and that he would be requiring a leave of absence in order to care for his son. (*Id*. ¶16). In particular, the plaintiff sent text messages to Matt Bower, a project manager working for the defendant, and Craig Morgan, another superintendent and employee of the defendant, about his son's condition and the need for time off. (*Id*. ¶17).

The plaintiff's son was hospitalized from approximately May 28, 2016 through June 9, 2016. (*Id*. ¶19). The plaintiff maintained contact with the defendant throughout this time, providing updates regarding his son's condition and the plaintiff's anticipated return date to work. (*Id*.). On or around June 1, 2016 or June 2, 2016, the plaintiff received a call from Mr. Bower. (*Id*. ¶21). Mr. Bower inquired into the plaintiff's son's health condition. (*Id*.). Mr. Bower advised the plaintiff that he thought it would be "better for both he and the company if [the] [p]laintiff were laid off." (*Id*. ¶22). Mr. Bower also told the plaintiff that he could use his accrued vacation time to cover the length of his leave of absence. (*Id*. ¶24). Allegedly, at no time did the defendant give the plaintiff notice of his rights, obligations, or entitlement to leave under the FMLA. (*Id*. ¶¶31–34).

Approximately two weeks after speaking with Mr. Bower, on June 15, 2016, the plaintiff went to the defendant's office to ask for an update and see if and/or when he could return to work. (*Id*. ¶25). The defendant advised the plaintiff "that his separation was a 'permanent termination' and that there would be no 'call back' date." (*Id*. ¶26). The plaintiff alleges, on information and belief, that no other employees were laid off at or around the time of the plaintiff's termination. (*Id*. ¶27).

On December 6, 2016, the plaintiff filed a complaint in this court alleging interference and retaliation under the FMLA. (Doc. 1). On February 1, 2017, the defendant filed its answer responding to the plaintiff's allegations and listing twenty-three affirmative defenses. (Doc. 5). On February 22, 2017, the plaintiff filed the current motion and brief in support seeking to strike fifteen of the defendant's twenty-three affirmative defenses. (Docs. 9–10). On March 15, 2017, after requesting and receiving an extension of time, the defendant filed its brief in opposition to the plaintiff's motion. (Doc. 14). The plaintiff did not file a reply and the plaintiff's motion is now ripe for review.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(f), the court on its own or on motion by a party may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."

*McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). These motions are generally disfavored and should be used "sparingly" only "when required for the purposes of justice." *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 408 (E.D. Pa. 2016) (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007)). They are viewed unfavorably because they are often used as a dilatory tactic in litigation. *Newborn Bros. Co., Inc. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014). As such, they will usually be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Deery v. Crystal Instruments Corp.*, No. 13-198 (WJM), 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (quoting *River Rd. Dev. Corp. v. Carlson Corp., N.E.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)). Courts may exercise "considerable discretion" when reviewing these type of motions. *Deery*, 2013 WL 4517867, at *1 (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).

Striking a pleading is a "drastic remedy" that is appropriate only "when the grounds for striking it are readily apparent from the face of the pleadings." *Id*. (quoting *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 740 (D.N.J. 2013)). Thus, these motions are to be decided on the pleadings alone. *Id*. In line with the above principles, a court may strike an affirmative defense if that defense is not recognized to the cause of action, but "a motion to strike an affirmative defense will not be granted where its sufficiency depends on

disputed issues of fact." *Newborn Bros. Co.*, 299 F.R.D. at 94 (quoting *Signature Bank v. Check-X-Change, LLC*, No. 12-2802 (ES), 2013 WL 3286154, at *2 (D.N.J. June 27, 2013)). Only when the defense asserted could not prevent recovery under any set of pleaded or inferable facts should the court, in its discretion, strike that defense. *Id*. at 93.

In addition to the above, where a defense is nothing more than a bare bones conclusory allegation, it may be stricken. *BJ Energy LLC v. PJM Interconnection, LLC*, Nos. 08-3619, 09-2864, 2010 WL 1491900, at *2 (E.D. Pa. April 13, 2010). Normally, a defendant need only "state in short and plain terms its defenses to each claim asserted" and "admit or deny the allegations." Fed. R. Civ. P. 8(b)(1). But, a defendant "must affirmatively state any avoidance or affirmative defense" or risk waiver. Fed. R. Civ. P. 8(c)(1). Rule 8(c) affirmative defenses stem from the common law pleas of "confession and avoidance," which accept the plaintiff's prima facie case as true, but defeat the plaintiff's claims nonetheless based on additional assertions. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1270 (3d ed. 2004). In comparison, Rule 8(b) deals with negative defenses, which are denials that directly contradict elements of the plaintiff's prima facie case. *Id*. A defendant may plead as many defenses as necessary, negative or affirmative, and they need not be consistent. Fed. R. Civ. P. 8(d).

"The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative

defense should not succeed." *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir.2002). To do this, at a minimum, the affirmative defense must "provide fair notice of the issue involved." *Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011). "[F]air notice requires more than a mere rote recitation of generally available affirmative defenses without citation to any other fact or premise from which an inference may arise that the stated defense is logically related to the case in any way." *Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 574 (M.D. Pa. 2015). Thus, "a defendant must state some basis for asserting the affirmative defense[ ] and may not merely recite all potential affirmative defenses available." *Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. 13-2510, 2014 WL 4548474, at *2 (E.D. Pa. Sept. 11, 2014).

## III.    DISCUSSION

The plaintiff argues that nine of the defendant's affirmative defenses bear no relationship to the plaintiff's claims for relief or a potential defense and/or fail to provide fair notice of the nature of the defense. These allegedly include the defendant's fifth through thirteenth affirmative defenses. The plaintiff also argues that another six of the defendant's affirmative defenses are either redundant, unrecognized as affirmative defenses, or fail to provide fair notice of the nature of the defense. These include the defendant's fifteenth through twentieth affirmative defenses. The court agrees, in part ,and

will grant the plaintiff's motion with respect to all of the affirmative defenses challenged except the defendant's sixteenth affirmative defense.

### A.     The Defendant's Fifteenth, Seventeenth, Eighteenth, and Twentieth Affirmative Defenses

The court agrees with the plaintiff that the defendant's fifteenth, seventeenth, eighteenth, and twentieth affirmative defenses should be stricken. Most of these allegations are not affirmative defenses but denials of the plaintiff's allegations. In addition, they are redundant.

The fact that a party has improperly labeled a negative defense an affirmative one would not normally prejudice the opposing party and justify striking that defense. *See* 5 Charles Alan Wright & Arthur R. Miller, §1269 (noting the lack of case law suggesting that improper designation resulted in substantial prejudice to the opposing party). Applying liberal pleading rules, the court may simply treat the defense as though it were properly labeled or allow amendment. *Id*. Here, however, not only are the defendant's fifteenth, seventeenth, eighteenth, and twentieth affirmative defenses improperly labeled affirmative defenses, they are also redundant. The court will strike them on this ground as they unnecessarily confuse the issues to be resolved in this case.

The plaintiff's fifteenth affirmative defense is premised on two basic allegations: (1) the defendant *did* provide the plaintiff with information regarding the FMLA, in particular, a booklet and a document detailing the FMLA and a certification form; and (2) the plaintiff failed to return the

certification form. (Doc. 5 at 7). This first portion of the defendant's fifteenth affirmative defense negates the plaintiff's allegations that the defendant *did not* provide FMLA information to the plaintiff. (Doc. 1 ¶¶31–34). It is also redundant as it is restated several times, near verbatim, in the defendant's responses to the plaintiff's complaint. (Doc. 5 ¶¶18, 31, 33). It is also restated verbatim in the defendant's twentieth affirmative defense. (*Id*. at 8). It is also a more narrow reiteration of the defendant's fourteenth affirmative defense which states that the defendant "complied with the provisions of the [FMLA]." (*Id*. at 7). This portion of the fifteenth affirmative defense is not an affirmative defense, but a negation of the allegations in the plaintiff's complaint. Moreover, it is redundant to the defendant's responses, its fourteenth affirmative defense, which the plaintiff does not challenge, and the plaintiff's twentieth affirmative defense, which the plaintiff does challenge.

The second portion of the defendant's fifteenth affirmative defense alleges that the plaintiff failed to provide a certification from a health care provider in compliance with the FMLA. This secondary part of the defendant's fifteenth affirmative defense is directly stated in one of the defendant's responses to the plaintiff's complaint. (*Id*. ¶18). It is also a more narrow reiteration of the defendant's twenty-third affirmative defense, which states that the plaintiff "failed to comply with the provisions of the [FMLA]." (*Id*. at 8). It is also a plainer reiteration of the defendant's "waiver" affirmative defense, the fifth affirmative defense, according to the defendant's briefing. (Doc. 14 at 6–7). Therefore, this second portion of the defendant's fifteenth affirmative

defense is redundant on many counts. The entirety of the defendant's fifteenth affirmative defense is restated in various locations in the defendant's answer and, as a result, the court will strike this defense as redundant.

The defendant's seventeenth and eighteenth affirmative defenses are also redundant. The seventeenth affirmative defense simply states that "[n]o leave of absence was offered to or discussed with [the] [p]laintiff." (Doc. 5 at 8). The eighteenth affirmative defense states that "[n]umerous employees were laid off at or around the time of [the] [p]laintiff's termination due to the lack of work in the oil and gas industry." (*Id.*). These same factual matters are repeated in the defendant's responses to the plaintiff's complaint allegations. (*Id.* ¶¶24, 27). Again, these so-called affirmative defenses negate allegations in the complaint—allegations that the plaintiff discussed his need for leave with the defendant, was told that he could use his accrued vacation time to cover his leave, and that no other employees were laid off at or around the time of the plaintiff's termination. (Doc. 1 ¶¶16–17, 24, 27). Again, these are not affirmative defenses but negations to the plaintiff's pleading of facts. They are redundant when compared to the defendant's direct responses. Accordingly, the court will strike the defendant's seventeenth and eighteenth affirmative defenses as such.

The defendant's twentieth affirmative defense is also redundant. It is a near verbatim reiteration of the defendant's fifteenth affirmative defense which has already been deemed redundant when compared to the defendant's fourteenth affirmative defense and the defendant's direct responses to the

plaintiff's complaint. This affirmative defense directly negates the plaintiff's allegations that he did not receive the required FMLA notice. (*Id*. ¶¶31–34). Thus, it is not a true affirmative defense, but a denial that the defendant properly pleaded in its responses to the plaintiff's complaint. (Doc. 5 ¶¶18, 31, 33). As such, it is redundant and will be stricken.

The defendant's response to the above redundancies is that it seeks to avoid waiver and that the plaintiff has not shown any prejudice. The court finds that the above defenses are properly preserved in the form of specific denials—the defendant's specific responses to the plaintiff's allegations. Moreover, the prejudice caused by duplicative affirmative defenses that bear no relationship to actual affirmative defenses and simply reiterate negations to the plaintiff's allegations is clear here. The redundancy of possibly litigating the same issue will naturally lead to duplication of work, delay, and a waste of judicial and litigant resources, as well as confuse the proper burdens of proof. Restating the same basic defense, affirmative or negative, a multitude of times unnecessarily confuses the issues in the case and will likely complicate relatively straightforward issues during discovery. Accordingly, the court will strike the defendant's fifteenth, seventeenth, eighteenth, and twentieth affirmative defenses as redundant.

### B. The Defendant's Seventh, Twelfth, Sixteenth, and Nineteenth Affirmative Defenses

The court will also strike the defendant's nineteenth affirmative defense and part of the defendant's sixteenth affirmative defense. In addition, the court

will strike the defendant's seventh and thirteenth affirmative defenses. The defendant's sixteenth and nineteenth affirmative defenses provide a long narrative of events summarized to the following allegations: (1) the plaintiff was terminated due to lack of work; and (2) the plaintiff agreed to receive unemployment compensation and accrued paid vacation instead of unpaid FMLA leave. (Doc. 5 at 7–8). These same basic allegations are repeated in several instances in the defendant's direct responses to the plaintiff's complaint allegations. (*Id*. ¶¶22, 23, 25, 26, 35, 36, 38, 39).

The second part of the defendant's sixteenth affirmative defense—that the plaintiff agreed to unemployment compensation instead of FMLA leave—is also repackaged in the defendant's seventh and twelfth affirmative defenses. The defendant's seventh affirmative defense relies upon the doctrine of consent. (*Id*. at 7). The defendant's twelfth affirmative defense relies on the doctrine of release. (*Id*.). These affirmative defenses are founded on the defendant's allegation that the plaintiff chose to pursue his options for unemployment compensation and not FMLA leave. (Doc. 14 at 9–11).

The court agrees with the plaintiff that there is no authority that consent is a valid affirmative defense to a statutory FMLA action. *C.f. Mayfield v. County of Merced*, No. 1:13-CV-1619-LJO-BAM, 2015 WL 791309, at *4 (E.D. Cal. Feb. 25, 2015) (striking consent defense to a Title VII employment claim as legally insufficient). Consent is typically asserted as an affirmative defense to a common law tort claim. *See* Restatement (Second) Torts §892A (1979) (explaining the effect of consent in a tort claim). One cannot say that a person

11

can "consent" to a statutory violation. "Employees cannot waive, nor may employers induce employees to waive, their prospective rights under [the] FMLA." 29 C.F.R. §825.220(d); *Conshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004). If an employee cannot waive his rights, it makes little sense to allow him to consent to a violation of those rights. Thus, assuming the plaintiff agreed to receive unemployment compensation, this could not serve as "consent" to the defendant's violation of the FMLA. Moreover, the defendant's consent defense is redundant as it is directly restated in the defendant's twenty-second affirmative defense. (Doc. 5 at 8 (alleging that the plaintiff "chose to pursue FMLA leave")). The plaintiff does not challenge this particular affirmative defense. Accordingly, the court will strike the defendant's seventh affirmative defense and the second part of sixteenth affirmative defense as legally insufficient and redundant.

The court will also strike the defendant's twelfth affirmative defense founded on the doctrine of release. An employee may settle or release claims. 29 C.F.R. §825.220(d); *see also generally Whiting v. The John Hopkins Hosp.*, 416 F. App'x 312, 314–15 (4th Cir. 2011) (explaining the changes to 29 C.F.R. §825.220(d) to clarify and make explicit that employees may voluntarily release claims). Thus, a release could serve as a valid affirmative defense to an employee's statutory FMLA action.

Here, the defendant has not indicated anywhere in its answer that the plaintiff agreed to release FMLA claims. At a minimum, the defendant must fairly notify the plaintiff of "the specific contractual agreement or other act that

12

forms the basis of [that] defense." *EEOC v. Courtesy Bldg. Servs.*, No. 3:10-CV-1911-D, 2011 WL 208408, at *4 (N.D. Tex. Jan. 21, 2011). Agreeing to receive unemployment compensation, the defendant's allegation, is not the same as agreeing to release statutory claims.

In response, the defendant argues that the plaintiff "cannot agree to one course of action which benefitted him and then assert that [the] [d]efendant violated the law for allowing him to do so." (Doc. 14 at 10). This broad proposition appears fair, but is followed by no legal support. Moreover, it is undoubtable true that agreeing to do one thing does not mean that a person is voluntarily agreeing to another, unstated thing, in this case the release of claims. Thus, the defendant's position that the plaintiff released his FMLA claims solely because he agreed to received unemployment compensation is legally untenable and will be stricken.

The defendant's nineteenth affirmative defenses and the first portion of the sixteenth affirmative defense offer the same basic proposition to the court—the defendant terminated the plaintiff because there was a lack of work and the defendant no longer needed the plaintiff as an employee. This allegation rejects and contradicts the plaintiff's allegations that the defendant terminated and retaliated against the plaintiff because the plaintiff was attempting to exercise his FMLA rights. (Doc. 1 ¶¶35, 37). It speaks to the true motivations and causation for the firing. The court will allow the first part of the sixteenth affirmative defense to stand for this proposition, as it most clearly stated there. (*See* Doc. 5 at 8 (stating the "[p]laintiff's employment was

terminated due to lack of work"). The court will strike the nineteenth affirmative defense as duplicative of the sixteenth.

The court will allow the defendant's proffered reason for the firing to stand as an affirmative defense due to the nature of FMLA interference and retaliation cases. In an interference claim, an employee must show that he or she was entitled to FMLA benefits and that he or she was denied that benefit. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). A legitimate business justification for the interference is not a defense to the claim. *Id.* at 119–20. A defendant can, however, mitigate its liability by then showing that the employee's position would have been eliminated even if the employee had not requested or taken FMLA leave. 29 C.F.R. §825.216(a); Model Civ. Jury Instr. 3d Cir. 10.1.1 (Mar. 2017) (citing *Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 487 (D.N.J. 2002)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012) (stating that an employer could defeat the employee's interference claim if it can show a reason for the firing that was unrelated to the employee's exercise of his or her FMLA rights). Thus, if the defendant can show he would have terminated the plaintiff regardless of the plaintiff's need for leave due to a lack of work, this will serve as a valid and recognized affirmative defense. Though the defendant's sixteenth affirmative defenses could be more clearly stated to conform with case law, the court will allow the defendant's sixteenth affirmative defense to stand for this defense.

Moreover, the plaintiff's claim are also based on the defendant's alleged retaliatory or discriminatory act under the FMLA, the plaintiff's termination.[1] There are two frameworks for this type of claim, a mixed-motive framework and a pretext framework. Under a mixed-motive framework, a plaintiff must prove that the request for leave or the taking of leave was a motivating or negative factor in the employer's decision and the employer can defend that action by showing it would have made the same employment decision even if there was no unlawful motive. *Conshenti*, 364 F.3d at 147; *see also Egan v. Del. River Port Auth.*, 851 F.3d 263 (3d Cir. 2017) (reaffirming the mixed-motive framework in FMLA retaliation/discrimination cases even in the absence of direct evidence of discrimination). For this "same-decision" defense, the burden on the employer acts the same way an affirmative defense would, even if the pleading burden has not been formally established.

---

[1] The plaintiff labels his claim as an "interference and retaliation" claim. (Doc. 1 at 5). It is clear, however, that the plaintiff is not alleging retaliation under 29 U.S.C. §2615(b) because he has not alleged he engaged in any protected activity. Instead, the court interprets the plaintiffs "retaliation" claim as a discrimination claim under 29 U.S.C. §2615(a)(2) and 29 C.F.R. §825.220(c). *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (noting that "it is not clear whether firing an employee for requesting FMLA leave should be classified as interference with the employee's FMLA rights, retaliation against the employee for exercising those rights, or both," and concluding that "firing an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee"). Specifically, the plaintiff's complaint alleges that the defendant "violated the FMLA by terminating [the] [p]laintiff . . . in retaliation for exercising his rights under the FMLA." (Doc. 1 ¶44). This is not retaliation in the strict sense under 29 U.S.C. §2615(b), but is actionable under 29 U.S.C. §2615(a)(2). *Erdman*, 582 F.3d at 509.

*See* Model Civ. Jury Instr. 3d Cir. 10.1.2 n. 16 (taking no position regarding the burden of pleading the same-decision defense).

Under the pretext framework, the plaintiff must show that the request for leave or the taking of leave was a determinative factor in the employer's decision after which the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the firing. *Lichtenstein*, 691 F.3d at 302 (describing the *McDonnell Douglas* pretext framework in an FMLA case). The plaintiff must then persuade the jury that the proffered reason is merely pretext; the burden of persuasion always remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Under this framework, the proffered reason does not operate the exact way a formal affirmative defense would operate and is more like a negation of the defendant's prima facie case.

The court does not know at this early stage which framework the plaintiff will use to prove his claim. Moreover, the court sees no harm in allowing the defendant's proffered reason to stand as an affirmative defense under either framework given the unique burden-shifting nature of FMLA retaliation/discrimination claims. Accordingly, the court will not strike the portion of the defendant's sixteenth affirmative defense that offers a nondiscriminatory reason for the firing, but will strike the defendant's nineteenth defense as redundant.

**C.    The Defendant's Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses**

With respect to the defendant's eight through eleventh affirmative defenses, these affirmative defenses bear no relationship to the plaintiff's statutory FMLA action. The court will strike them on this ground. The defendant's eight affirmative defense asserts the doctrine of accord and satisfaction. (Doc. 5 at 7). The defendant's ninth affirmative defense asserts the doctrine of payment. (*Id*.) The defendant's tenth affirmative defense asserts the doctrine of assumption of risk. (*Id*.). The defendant's eleventh affirmative defense asserts the doctrine of license and/or privilege. (*Id*.).

The defendant does not defend these affirmative defenses as legally recognizable in an FMLA action but, instead, points to the fact that no case law advises that these defenses should be stricken. (Doc. 14 at 10–11). No FMLA case law should assert these basic points of law, as an FMLA action, by its nature, would not include allegations of a contractual nature, a wrongful payment to the defendant, or allegations of personal injury as a basis for the claim. Although the above defenses are affirmative defenses to various claims for relief, they are not legally cognizable as applied to a statutory FMLA action and under no set of pleaded or inferable facts could the court legally find for the defendant on these asserted grounds. *Newborn Bros. Co.*, 299 F.R.D. at 93.

The court views the inclusion of the above affirmative defenses as either an error based on boilerplate documents or an incorrect reading of the plaintiff's claims for relief. In either event, they confuse the proper legal issues

under the FMLA, issues that are resolved by the statute itself, U.S. Department of Labor regulations, and case law interpreting the FMLA. Accordingly, the court will strike these affirmative defenses as legally insufficient.

### D.    The Defendant's Thirteenth and Sixth Affirmative Defenses

The defendant's thirteenth defense will be stricken based on the defendant's concession. This defense is premised on the FMLA's statute of limitations. (Doc. 5 at 7). The FMLA's limitations period is two years, unless there is a "willful violation," in which case the period is extended to three years. 29 U.S.C. §2617(c). The plaintiff's alleges in his complaint that his termination occurred on June 15, 2016. (Doc. 1 ¶25). His complaint was filed in this court on December 6, 2016, approximately six months after the alleged termination. The defendant did not provide contradictory dates in its answer. The defendant concedes "that the statute of limitations is inapplicable in this case." (Doc. 14 at 11). Accordingly, the court will save the parties the time and expense of litigating this statute of limitations issue and strike this affirmative defense as the parties now agree that it is not truly an issue.

Although the defendant concedes that the statute of limitations is not applicable to bar the plaintiff's claims in this case, the defendant argues that its sixth affirmative defense asserting laches should stand. Under the FMLA's two-year limitations period, the plaintiff's filing was clearly timely having been

filed within six months of the termination and the defendant's laches defense does not apply.

In an opinion dealing with the statute of limitations in the Patent Act, the Supreme Court in *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017) fully detailed the history and nature of the equitable defense of laches. The Supreme Court also reaffirmed its decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) which held that the defense of laches could not be used to bar a suit brought within the Copyright Act's statutory limitations period. The Supreme Court explained as follows:

> When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislative-overriding" role that is beyond the Judiciary's power. As we stressed in *Petrella*, "courts are not at liberty to jettison Congress' judgment on the timeliness of suit."

*SCA Hygiene Prod. Aktiebolag*, 137 S. Ct. at 960 (quoting *Petrella*, 134 S. Ct. at 1974, 1967 (internal citations omitted). In contrast, where no statute of limitations applies laches may apply. *Petrella*, 134 S. Ct. at 1973; *Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 181 (3d Cir. 2004).

There are exceptions to the above rule. In a hostile work environment claim under Title VII the statutory time limitation can be used in conjunction with a laches defense. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002). In those type of claims, the actual claim or basis for the claim may extend over long periods of time based on a serious of separate acts, as opposed to arising after some discrete, identifiable act. *See Petrella*, 134 S. Ct. at 1970 n. 7 (noting the distinction in *Morgan* between discrete acts separately actionable and conduct that is cumulative in effect). In those instances, laches is invoked to save untimely claims that are still technically within the limitations period due to the very nature of the actionable conduct as ongoing. *See id*. at 1975 n. 16 (explaining that laches is invoked in hostile work environment claims "to limit the continuing violations doctrine's potential to rescue *untimely* claims, not claims accruing separately within the limitations period." (emphasis in original)). In comparison, the Supreme Court has "never applied laches to bar in their entirety claims for discrete wrongs occurring within a federally prescribed limitation period." *Id*. at 1975.

Here, there is nothing unusual that would make laches applicable to the plaintiff's claim for relief. His claim is based on a single, identifiable action by the defendant, his termination on June 15, 2016. The plaintiff's complaint was filed within six months of that termination, well within the two and three-year limitations periods established by Congress. Accordingly, the defendant's laches affirmative defense is legally insufficient and will be stricken.

### E.     The Defendant's Fifth Affirmative Defense

Finally, the court addresses the defendant's fifth affirmative defense grounded in the doctrines of "waiver and/or estoppel." (Doc. 5 at 6). The court has previously explained that the rights created under the FMLA cannot be waived, though they can be released. In response, the defendant argues that a waiver occurred based on the plaintiff's failure to provide a health certification, which an employer may require under 29 C.F.R. §825.305(a). This argument is another way of saying that the defendant complied with the FMLA, which is explicitly stated in the defendant's twenty-third defense. (Doc. 5 at 8). This compliance is not a "waiver" of rights, but a negation of the plaintiff's allegations regarding the defendant's FMLA compliance. To the extent the plaintiff seeks to preserve its argument regarding the health certification, this argument is preserved directly in the defendant's responses to the plaintiff's complaint, (*id*. ¶18), and the defendant's twenty-third defense, which the plaintiff does not challenge. Accordingly, the defendant's waiver defense, nestled within its fifth affirmative defense, is legally insufficient and redundant and will be stricken.

The defendant's equitable estoppel defense will also be stricken. In two non-precedential opinions, the Third Circuit Court of Appeals has recognized the availability of estoppel in an FMLA action. *Palan v. Inovio Pharmaceuticals Inc.*, 653 F. App'x 97 (3d Cir. 2016); *Leese v. Adelphio Vill. Inc.*, 516 F. App'x 192 (3d Cir. 2013). Thus, the court has joined a number of circuits who have recognized estoppel in the FMLA context. *See Palan*, 653 F. App'x at 100 n.

[5](collecting cases). In none of these decisions, however, is estoppel used as a defense to bar an employee's FMLA claim. Instead, estoppel is used to estop a defendant from asserting that the employee is ineligible under the FMLA based on representations made to the employee. In those circumstances estoppel is appropriate where there is a "definite misrepresentation" indicating "affirmative conduct . . . that was designed to mislead or was unmistakably likely to mislead [the employee]." *Id*. at 101. In addition, there must be detrimental reliance indicated by the fact that the employee changed his or her position due to the misrepresentation. *Id*. at 102.

Nothing in this language suggests that the employee's entire FMLA claim would be barred by the doctrine of estoppel. If an employee cannot voluntarily waive FMLA claims, it would make little sense if he or she could be estopped from asserting those same claims because the employee's actions led the employer to believe those claims were waived. *Cf. Escriba v. Foster Poultry Farms*, 793 F. Supp. 2d 1147, 1169 (E.D. Cal. June 3, 2011) (granting summary judgment in favor of the plaintiff with respect to the defendant's waiver, estoppel, laches, acquiescence, and/or consent affirmative defenses based on the plaintiff's inability to waive FMLA rights). The defendant should know that "[e]mployee's cannot waive, nor may employer's induce employees to waive, their prospective rights under the FMLA." 29 C.F.R. §825.220(d).

The defendant's allegations regarding the plaintiff's conduct and his alleged choice to pursue unemployment compensation instead of FMLA leave

are also adequately preserved as a defense to factual matters in numerous instances in the defendant's answer. These allegations are preserved directly in the defendant's responses, (Doc. 5 ¶¶22, 23, 25, 26, 35, 36, 38, 39), and in the defendant's twenty-second affirmative defense, which the plaintiff does not challenge. (*Id*. at 9 (asserting that the plaintiff "chose not to pursue FMLA leave)). Labeling this allegation estoppel where there is no legal support for doing so unnecessarily confuses the matters to be litigated in this case and is needlessly redundant. The same allegation need not be repackaged in a multitude of ways to preserve the defendant's argument. Accordingly, the court will strike the defendant's fifth affirmative defense.

## IV. CONCLUSION

In light of the court's decision above, the plaintiff's motion to strike, (Doc. 9), will be granted in part and denied in part. The court will strike the defendant's fifth, sixth, seventh, eight, ninth, tenth, eleventh, twelfth, thirteenth, fifteenth, seventeenth, eighteenth, nineteenth, and twentieth affirmative defense as they are listed in the defendant's answer to the plaintiff's complaint. (Doc. 5). These affirmative defenses are redundant and/or legally deficient as applied to the plaintiff's FMLA action. The court will also strike the defendant's sixteenth affirmative defense, in part. The portion of the defendant's sixteenth affirmative defense that proffers an alternative business reason for the plaintiff's firing due to a lack of work will stand. The

court will strike the remaining portion of the defendant's sixteenth affirmative defense as redundant and/or legally deficient. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated: September 28, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2412-01.wpd